IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION FILE<br>NO. 1:22-CR-00446-TCB-JEM |
| DAMIEN KENARD CRUMBLEY, | |
| Defendant. | |

UNITED STATES MAGISTRATE JUDGE'S
NON-FINAL REPORT AND RECOMMENDATION

Pending before the Court are Defendant's Motion to Return Property, (Doc. 10), Motion to Suppress Evidence, (Doc. 28), Motion to Dismiss Indictment, (Doc. 29), Motion to Suppress Statements, (Doc. 31), Motion to Suppress Cellular Phone Extraction, (Doc. 42), and Amended Motion to Suppress Evidence, (Doc. 45). For the following reasons, the Court **RECOMMENDS** that the motions, (Docs. 10, 28, 29, 31, 42, 45), be **DENIED**.

I.   **INTRODUCTION**

Atlanta Police Department ("APD") Detective (then-Officer) Brandon Pectol has worked as an off-duty law enforcement officer at Lacura Bar & Bistro nightclub for his entire eight-year career. (Tr. at 13:20-21, 15:1-2, 16:10.) In that time, he has become familiar with patrons who frequent Lacura, including Defendant. (*Id.* at 16:16-20.) At some point, he became aware that Defendant had an outstanding Fulton County arrest warrant through an APD Wanted BOLO ("Be On the Lookout") alert. (*Id.* at 17:4-13; Gov. Ex. 1.) After seeing the BOLO,

Det. Pectol determined that he would attempt to take Defendant into custody the next time he saw Defendant at Lacura. (Tr. at 17:25-2.) On October 2, 2021, Det. Pectol and Ofc. Austin Denninger were working as off-duty law enforcement officers at Lacura. (Tr. at 14:17-15:2, 39:4-40:6.) Det. Pectol was stationed outside the nightclub and was tasked with monitoring the coming and going of patrons and any activities occurring in the parking lot. (Tr. at 15:23-16:5.) When Det. Pectol saw Defendant, he notified his unit – the Atlanta Proactive Enforcement and Interdiction (APEX) unit – and his partner, Det. (then-Ofc.) Sherrod Stancil, to assist with Defendant's arrest. (Tr. at 18:2-9.) Det. Pectol watched Defendant get into the passenger seat of a blue Honda Accord while carrying a black backpack. (Tr. at 18:12-15, 24:18-22.) The car remained parked in the nightclub lot. (Gov. Ex. 2 at 0:00-0:05.)

After a short while, Det. Sherrod Stancil arrived. (Gov. Ex. 4 at 1:55.) As Det. Stancil approached the passenger side of the car, he saw through the window that Defendant was "fiddling with [a bag] on the ground[.]" (Tr. at 57:15-16, 61:5; Gov. Ex. 4 at 2:17-2:20.) When Det. Stancil opened the front passenger door, he saw Defendant holding a cell phone, which he seized and placed on top of the car. (Tr. at 57:13-19, 59:5-7.) He also smelled marijuana "as soon as [h]e opened the door." (Tr. at 59:21-22.) He removed Defendant from the car and placed him under arrest. (Gov. Ex. 4 at 2:20-2:54.)

Meanwhile, Ofc. Denninger walked to the driver's side of the vehicle. (Tr. at 42:6; Gov. Ex. 3 at 0:00-0:12.) Ofc. Denninger asked the driver if he had any "weed" in the vehicle, and the driver responded, "Yeah." (Gov. Ex. 3 at 0:44-

0:51.) Several minutes later, Det. Stancil questioned the driver about having anything illegal in the vehicle. (Gov. Ex. 4 at 6:20-6:36.) The driver told Det. Stancil that about an ounce and a half of marijuana was in the car. (Gov. Ex. 3 at 4:02-4:09; Gov. Ex. 4 at 6:30-6:36.) Det. Stancil then searched the vehicle. (Gov. Ex. 4 at 4:15-7:10, 8:46-9:50.) He saw marijuana "roaches" in the ashtray near the center armrest. (Tr. at 59:23-60:2.) He also found the black backpack on the passenger side floorboard and searched it. (Tr. at 62:15-17; Gov. Ex. 4 at 6:40-7:10.) The driver indicated that the backpack belonged to Defendant. (Gov. Ex. 4 at 6:57-7:00.) The backpack contained a firearm and a prescription in Defendant's name. (*Id.* at 6:50-7:12.) Det. Stancil turned Defendant's cell phone, firearm, backpack, and prescription into the Fulton County Jail as property. (Tr. at 78:19-21.) The phone was returned to Defendant when he was released the next day on bond. (Tr. at 80:20-24.)

On November 13, 2021, Defendant was re-arrested on the same Fulton County warrant, and APD once again seized a cell phone from him upon his arrest. (Tr. at 80-81.) Defendant remained in Fulton County Jail until he was released on November 18, 2022. (Tr. at 81.) At that time, his phone was returned to him. (*Id.*) Before Defendant left the jail, FBI Special Agent Ravel Pierrissaint arrested him on a federal arrest warrant. (Tr. at 82.) During the arrest, SA Pierrissaint searched Defendant and seized his cell phone. (*Id.* at 81-82).

On November 22, 2022, Defendant filed a motion for the return of his cell phone. (Doc. 10.) On November 23, 2022, United States Magistrate Judge Justin Anand signed a federal search warrant that authorized the forensic extraction of

the cell phone on or before December 7, 2022. (Def. Ex. 1.) SA Pierrissaint first attempted to conduct the extraction on November 28, 2022. (Tr. at 84:8-12.) To do so, he took the phone to an FBI kiosk housing a computer with software that allows agents to extract data from cell phones without delay. (Tr. at 84:15-21, 85:8-9.) He turned the phone on, plugged it into the kiosk, and ran the software program. (Tr. at 85:10-12.) The computer, though, was unable to extract anything from the phone because it was password protected. (Tr. at 85:2-5.) SA Pierrissaint attempted the extraction a second time on November 29, 2022, because the kiosk's software had been updated, but he was again unsuccessful. (Tr. at 85:21-86:4.) At that point, he placed the phone in the queue to be extracted by the FBI's Cellular Analysis Response Team (CART). (Tr. at 86.) On December 13, 2022, Defendant was indicted in the Northern District of Georgia for possessing a firearm as a convicted felon. (Doc. 13.) On June 2, 2023, CART notified SA Pierrissaint that they were able to complete only a partial extraction of the phone, which yielded only photographs. (Tr. at 88:3-17.)

On May 22, 2023, Defendant moved to suppress the evidence seized during his arrest on October 2, 2021, (Doc. 28), and he moved to dismiss his indictment, (Doc. 29). On June 8, 2023, Defendant moved to suppress all post-arrest statements he made to law enforcement officers. (Doc. 31.) On January 16, 2024, Defendant moved to suppress evidence collected from his cell phone, (Doc. 42), which he perfected on February 1, 2024, (Doc. 45). On April 12, 2024, the Court held an evidentiary hearing on the suppression motions. (Doc. 58.) With the post-hearing briefing completed, the motions are ripe for review.

## II. DISCUSSION

### A. Motion to Suppress Evidence

Defendant seeks to suppress the evidence that resulted from the officers' search of the vehicle and his backpack, arguing that they did not have probable cause to conduct those searches. (Doc. 28; Doc. 69 at 4-11, 12-13.) Defendant, as a threshold issue, argues that Defendant does not have standing to challenge these searches. The Court will address each argument in turn.

#### 1. Defendant has standing to challenge the search of his backpack but not the vehicle.

To have standing to challenge a search under the Fourth Amendment, "'a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'" *United States v. Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation omitted). Under Eleventh Circuit precedent, "a passenger with no possessory interest in the vehicle lacks standing to challenge the search of the interior of that vehicle." *United States v. Ramos*, No. 1:18-cr-0217-MHC-AJB, 2020 U.S. Dist. LEXIS 126955, at *11-12 (N.D. Ga. June 29, 2020) (citing *United States v. Dixon*, 901 F.3d 1322, 1338-39 (11th Cir. 2018); *United States v. Lee*, 586 F.3d 859, 865 (11th Cir. 2009); *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam); *Lewis v. United States*, 491 F. App'x 84, 86 (11th Cir. Oct. 1, 2012); *United States v. Ubaldo-Viezca*, 398 F. App'x 573, 579 (11th Cir. Oct. 6, 2010)). "A passenger, of course, may challenge the search of his own property which is within the vehicle." *Id.* at *12 (citing *Barber*, 777 F.3d at 1305). In *Barber*, the defendant was a passenger in a car that was stopped and searched by law

5

enforcement officers. 777 F.3d at 1303. After the driver consented to a search of the car, the officers searched a bag that had been at the defendant's feet on the passenger-side floor. *Id.* at 1304. The parties disputed whether the defendant had standing to challenge the search of the bag, *id.*, and the court concluded that he did, *id.* at 1305. The court explained that the defendant had a subjective expectation of privacy in the bag because it contained his business cards, computer flash drives, and photographs of him with his children, and that he had a reasonable expectation of privacy in his bag because he was present for the search and the bag was at his feet when the officers stopped the car. *Id.* Likewise, Defendant has standing to challenge the search of his backpack because Det. Pectol witnessed Defendant carrying the backpack to the car shortly before his arrest, the backpack was at Defendant's feet on the passenger floorboard at the time of his arrest, the driver identified the backpack as belonging to Defendant, and the backpack contained a prescription bottle bearing Defendant's name. However, Defendant lacks standing to challenge the search of the vehicle because he has not established any possessory interest in it.

    **2.    The officers had probable cause to search Defendant's backpack.**

"[I]f law enforcement has probable cause to believe a package within a car contains evidence or contraband, they may conduct a warrantless search of the package, even if they do not have probable cause to search the entire car." *United States v. Mathis*, 239 F. App'x 513, 515 (11th Cir. 2007) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). "Probable cause exists 'when the facts and circumstances would lead a reasonably prudent [person] to believe that the

6

vehicle contains contraband.'" *Id.* (quoting *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988)). Here, the government asserts that the officers had probable cause to search the vehicle and Defendant's backpack because (i) Det. Stancil smelled marijuana, and (2) the driver admitted that marijuana was in the car. (Doc. 70 at 8.) The Court agrees.

The smell of marijuana can provide probable cause to search a vehicle when an officer, through training or experience, detects the smell. *United States v. Tobin*, 923 F.2d 1506, 1512 (1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.") (citing *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982)). Here, Det. Stancil testified that he smelled marijuana as soon as he opened the door of the car. He also testified that when he arrested Defendant, he was part of the APEX unit, which focused on making drug and firearm arrests. (Tr. at 54:9-17.) Defendant argues that the smell of marijuana no longer provides probable cause for a search because it smells the same as hemp, a readily available commercial produce that is not illegal to possess or smoke under federal or state law. (Doc. 69 at 11). This argument is unsuccessful. While hemp is legal in Georgia, marijuana is not. O.C.G.A. § 16-13-30(j)(1). Therefore, at present, the smell of marijuana remains a basis for probable cause in Georgia. *See United States v. Axon*, No. 8:21-CR-374-VMC-CPT, 2023 WL 4927017, at *2 (M.D. Fla. Aug. 2, 2023) (rejecting defendant's argument that court should ignore Eleventh Circuit precedent issued before hemp and medical marijuana were legalized, and

noting that subsequent Eleventh Circuit case law still holds that marijuana odor provides probable cause). *C.f. Lingo v. City of Salem*, 832 F.3d 953, 961 (9th Cir. 2016) ("It is decidedly not the officers' burden to rule out the possibility of innocent behavior in order to establish probable cause. . . . Thus, the mere fact that [the defendant] suggested a potential lawful source of the marijuana-like odor does nothing to contradict the officers' statements that such an odor existed. . . . [S]uch odor gave the officers probable cause to arrest [the defendant.]") (internal quotation marks and citation omitted); *United States v. Bignon*, 813 F. App'x 34, 37 (2nd Cir. 2020) ("[B]ecause probable cause may exist even when a suspect is in fact innocent," it existed even though the defendant "repeatedly [and truthfully] told the arresting officers that he was smoking hemp, not marijuana") (internal quotation marks and citation omitted); *Owens v. State*, 317 So. 3d 1218, 1220 (Fla. Dist. Ct. App. 2021) ("[W]e conclude that the recent legalization of hemp, and under certain circumstances marijuana, does not serve as a sea change undoing existing precedent, and we hold that regardless of whether the smell of marijuana is indistinguishable from that of hemp, the smell of marijuana emanating from a vehicle continues to provide probable cause for a warrantless search of the vehicle."). And because the smell of marijuana gave the officers probable cause to search the vehicle, that probable cause "justifie[d] the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

Additionally, the driver admitted multiple times prior to the search that marijuana was in the car, and he specifically admitted to Det. Stancil that it was

an ounce and a half. This admission provided Det. Stancil with probable cause to search Defendant's backpack. *See United States v. Jasper*, No. CR419-191, 2020 WL 1862243, at *3 (S.D. Ga. Mar. 2, 2020), *report and recommendation adopted*, No. CR419-191, 2020 WL 1848054 (S.D. Ga. Apr. 13, 2020), ("Even assuming—contrary to established law—that [the officer] did not have probable cause the moment he smelled burnt marijuana, he would have had probable cause to search the car based on [the defendant's] admission that he had 'a little pot.'") (citing *United States v. Gandara-Nunez*, 564 F.2d 693, 695 (5th Cir. 1977) ("Once possession of marijuana was admitted, the officer had probable cause for a search.")); *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1366 (N.D. Ga. 2011), *aff'd sub nom. United States v. Moreno*, 559 F. App'x 940 (11th Cir. 2014), ("[I]t is permissible to conduct a warrantless search of an automobile, and any containers found therein, provided that, at the time of the search, there is probable cause to believe that contraband or evidence is secreted at some unspecified location within the automobile.") (citing *Acevedo,* 500 U.S. 565 (1992); *Ross,* 456 U.S. 798).

Defendant challenges this conclusion in two ways. First, he argues that the evidence shows Det. Stancil did not search Defendant's backpack for the purpose of finding marijuana. (Doc. 73 at 4.) He points to Det. Stancil's testimony that, "[w]hile [the smell of marijuana] may not have anything to do with [Defendant], that does give us legal reason to search [the] car[,]" and to a portion of his bodycam footage where he says, "We're about to rip through this car real quick because he's known to carry a pistol." (*Id.*) (citing Gov. Ex. 4 at 6:00-05). However, Det. Stancil's statement that the smell of marijuana "may" not have

9

been related to Defendant and his belief that he could find a firearm in the vehicle does not take away from his belief that he could find marijuana in Defendant's backpack. Indeed, when asked at the hearing why he looked in the backpack, Det. Stancil testified that, "during the search, . . . you go into anyplace that marijuana can be kept," and that, in his training and experience, an ounce and a half of marijuana could have easily fit in the backpack. (Tr. at 62:15-29.) Specifically, he testified that an ounce and a half of marijuana is about the size of a softball. (Tr. at 63:2-7.) Second, Defendant argues that the officers should not have even reached his backpack in their search of the vehicle because they saw the marijuana roaches in the center console which explained both the smell of marijuana and the driver's admission. (*Id.* at 4-5.) Defendant cites no legal authority to support this argument. (*See id.*) Regardless, observing several marijuana roaches would not signal to any reasonable officer that he had located a softball-sized amount of marijuana.

In sum, the Court finds that the government has carried its burden of establishing that the smell of marijuana and the driver's admission of an ounce and a half of marijuana in the car provided the officers with probable cause to search Defendant's backpack. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence, (Doc. 28), be **DENIED**.

    **B.**    <u>**Motion to Suppress Cellular Phone Extraction**</u>

Defendant argues that the evidence extracted from his cell phone should be suppressed because the warrantless seizure of the phone on November 18, 2022, was impermissible. (Doc. 69 at 12.) "[T]he Supreme Court has interpreted

the Fourth Amendment to allow a warrantless seizure [of private property] when police can show both (1) probable cause to believe that property contains contraband or evidence of a crime and (2) an applicable warrant exception, such as exigent circumstances." *United States v. Babcock*, 924 F.3d 1180, 1186 (11th Cir. 2019) (citing *Kentucky v. King*, 563 U.S. 452, 459-60 (2011)). Defendant argues that the FBI cannot show either element to support their warrantless seizure of his phone. (Doc. 69 at 12.) The government argues, and the Court agrees, that SA Pierrissaint seized Defendant's cell phone incident to his arrest, which he may lawfully do even absent probable cause. (Doc. 70 at 12) (citing *United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."); *United States v. Ouedraogo*, 824 F. App'x 714, 720 (11th Cir. 2020) ("[E]ven absent probable cause or suspicion of danger, police can routinely search individuals and personal items the individuals have on them when they are arrested and seize anything probative of proving criminal conduct.")). *See also Riley v. California*, 573 U.S. 373, 401 (2014) ("Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals.").

      Defendant also argues that the final search of his cell phone on June 2, 2023, was "warrantless" because it was conducted nearly six months after the warrant's expiration date. (Doc. 69 at 13.) While "[t]he Fourth Amendment does not specify that search warrants contain expiration dates[,]" *United States v.*

11

*Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993), Rule 41 provides that a search warrant must be "executed" within 14 days, Fed. R. Crim. P. 41(e)(2)(A). Judge Anand issued the search warrant on November 23, 2022, and ordered that it be executed by December 7, 2022. SA Pierrissaint unsuccessfully attempted to extract data from Defendant's cell phone within that timeframe—once on November 28, 2022, and once on November 29, 2022. More than six months later, on June 2, 2023, CART successfully extracted photographs from the phone. The government argues that SA Pierrissaint complied with the warrant's 14-day deadline because he "[took] steps to initiate the search/unlock process" within the warrant's 14-day timeframe. (Doc. 70 at 13.) Defendant argues that SA Pierrissaint did not "execute" the search warrant within 14 days because he did not complete the search during that time. (Doc. 73 at 6.) He also argues that SA Pierrissaint failed to act reasonably, pointing to the hearing testimony that the final extraction attempt was made one week after a status conference on May 26, 2023, during which Defendant's counsel raised the issue and the Court inquired about the results of the extraction. (Doc. 73 at 7.) Defendant argues that, based on this testimony, the FBI could have conducted the extraction earlier but chose not to. (*Id.*)

    The Court finds that the warrant was timely executed and that the June 2023 search did not violate the warrant. "Although the Court has not found any Eleventh Circuit cases that deal with this particular scenario, other circuit courts generally hold that a search of a password-protected phone complies with Rule 41(e)(2)(A) so long as officers either seize the phone or take steps to extract the

12

phone's data within the 14-day period." *United States v. White*, No. 4:22-CR-00017-WMR, 2023 WL 7703553, at *9 (N.D. Ga. Nov. 15, 2023) (citing *U.S. v. Carrington*, 700 F. App'x 224, 232 (4th Cir. 2017) (upholding search of phone when FBI accessed phone's contents five months after search warrant expired); *U.S. v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018) (holding that search warrant for previously-seized phone was "executed" when phone was removed from its location and shipped to an analytics laboratory); *U.S. v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013) ("Law enforcement is permitted to decode or otherwise analyze data on a seized device at a later time.")). Here, SA Pierrissaint testified that, within 14 days from the issuance of the search warrant, he attempted to extract the data from Defendant's password-protected cell phone twice and, when unsuccessful, he gave the phone to CART for extraction. During the hearing, SA Pierrissaint also testified to the CART queue process. He explained that CART prioritizes the search of cell phones based on three levels. (Tr. at 86:17-18.) A Level 1 designation is given when "there's a threat to life or . . . immediate danger or [a] threat to national security." (Tr. at 86:18-20.) CART conducts Level 1 extractions "immediately." (Tr. at 86:20-21.) A Level 2 designation is given when "there's a court order [that the phone must be extracted immediately] or the case is getting ready for trial[.]" (Tr. at 86:22-23; 87:9-11.) A Level 3 designation is given to most cell phones subject to search warrants, and CART processes those searches in the order in which they receive the phone. (Tr. at 86:23-87:2, 13.) When SA Pierrissaint gave the phone to CART, it was Number 45 in the Level 3 queue. (Tr. at 87:2-4.) After the status conference

on May 26, 2023, SA Pierrissaint told CART that the Court was inquiring about the search results for Defendant's cell phone, and he asked CART to move the search to Level 2. (Tr. at 87:19-23.) CART did so, and "tried to do the extraction as soon as they could." (Tr. at 87:23-24.) CART notified SA Pierrissaint about the extraction results one week later. (Tr. at 88:3.) Based on the foregoing facts, the Court finds that SA Pierrissaint timely executed the search warrant, *see White*, 2023 WL 7703553, at *9, and that the June 2023 search did not violate the warrant, *see Huart*, 735 F.3d at 974 n.2.

The government further argues that even if the warrant was not timely executed in violation of Rule 41, the "extreme remedy of exclusion" is not a warranted sanction. (Doc. 70 at 16.) The Court agrees. According to the Eleventh Circuit:

> [U]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993) (quoting *U.S. v. Loyd*, 712 F.2d 331, 333 (11th Cir. 1983)). Here, Defendant has not demonstrated that the seizure, search, or holding of his cell phone was a constitutional violation. And, as the government argues, Defendant has not demonstrated how he was prejudiced by any delay in the warrant's execution or that SA Pierrissaint or CART intentionally or deliberately disregarded the search warrant's 14-day deadline. (Doc. 70 at 16.) Rather, as explained above, SA Pierrissaint twice

attempted to access Defendant's password-protected cell phone within the search warrant's deadline and that, when he was unsuccessful, he promptly turned the phone over to CART for processing. Therefore, even if the warrant was not timely executed, suppression of the data extracted from it is not warranted. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Suppress Cellular Phone Extraction, (Doc. 42), and Amended Motion to Suppress Evidence, (Doc. 45), be **DENIED**.

### C. Motion to Suppress Statements

Defendant affirmatively represents in his brief that he no longer wishes to pursue the suppression of his post-arrest statements. (Doc. 69 at 11.) Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Suppress Statements, (Doc. 31), be **DENIED**.

### D. Motion to Dismiss

Defendant was indicted on a single count of violating 18 U.S.C. § 922(g)(1) for being a convicted felon in possession of a firearm. (Doc. 13.) He sought to have his indictment dismissed, arguing that § 922(g)(1) violates the Second Amendment. (Doc. 29 at 1) (citing *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (June 3, 2022)). Defendant acknowledges that he presently lacks a legitimate challenge to his indictment based on *United States v. Dubois*, 94 F.4th 1284 (11th Cir. March 5, 2024). (Doc. 69 at 13); *Dubois*, 94 F.4th at 1291 ("our precedent forecloses [the] argument that section 922(g)(1) violates the Second Amendment"). Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Indictment, (Doc. 29), be **DENIED**.

### E. Motion for Return of Property

Defendant moves for the return of his cell phone under Rule 41(g) on the basis that it was seized by the FBI without a warrant upon his arrest on November 18, 2022. (Doc. 10.) The Court has concluded that the seizure of Defendant's cell phone on that date was lawful. Section II.B., *supra*. Accordingly, the Court **RECOMMENDS** that Defendant's Motion for Return of Property, (Doc. 10), be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Return Property, (Doc. 10), Motion to Suppress Evidence, (Doc. 28), Motion to Dismiss Indictment, (Doc. 29), Motion to Suppress Statements, (Doc. 31), Motion to Suppress Cellular Phone Extraction, (Doc. 42), and Amended Motion to Suppress Evidence, (Doc. 45), be **DENIED**. With no other pending motions, this case is **CERTIFIED READY FOR TRIAL**.

**SO RECOMMENDED** September 18, 2024.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE